UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JAMES W. GALLIGAN,

Plaintiff,

v.

ARAMARK MANAGEMENT SERVICES LIMITED,

Defendant.

C.A. No. 06-290T

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Local Rule 56(a) for the United States District Court for the District of Rhode Island, and the individual rules of this Court, Defendant ARAMARK Management Services Limited Partnership ("ARAMARK" or "Defendant") respectfully submits this Statement of Undisputed Facts in support of its Motion for Summary Judgment.[1]

**A. Plaintiff's Employment With ARAMARK**

1. Plaintiff James Galligan ("Plaintiff") began working for ARAMARK in 1998 when ARAMARK purchased Facility Resources Management, the company that Plaintiff had worked with since 1991. (Deposition of Plaintiff James Galligan taken on May 31, 2007 ("Pl. Dep.") at 7:12-8:2).

2. In 1997, ARAMARK entered into a contract with the State of Rhode Island Energy (also known as "Chesapeake Energy") to handle the operations of the primary systems at the Howard Complex Central Power Plant (the "Howard Complex"), a self-sufficient power

[1] Exhibits in support of this Statement of Facts are contained in the Appendix filed herewith.

plant that produced electricity and steam for heating and air conditioning. (Pl. Dep. at 10:24-11:7, 11:15-11:19, 16:8-10, 20:1-3).

3. ARAMARK employed Plaintiff as a Primary Systems Operations Manager. (Complaint ¶4). In that capacity, Plaintiff was in charge of the mechanical and electrical operations in the central power plant. (Pl. Dep. at 19:19-20:1). He also supervised non-ARAMARK, state employees, including all of the engineers as well as the mechanical and electrical trades employees who worked out in the field on the distribution systems. (Pl. Dep. at 20:13-21:5).

**B. Plaintiff Took Short Term Disability Leave**

4. In the summer of 2003, Plaintiff received a preliminary diagnosis of cirrhosis of the liver. (Pl. Dep. at 35:14-15, 36:7-8).

5. Plaintiff's last day of work was June 27, 2003. (Pl. Dep. at 31:6-7).

6. ARAMARK's short term disability policy provides that all salaried employees receive 26 weeks of salary continuation. (Ex. A at P00079; Pl. Dep. at 75:10-15). There is a ten day grace period during which employees are encouraged to use Paid Time Off ("PTO") or vacation time until disability benefits trigger. (Id.). Thus, the first ten working days constitute the waiting period, during which time an employee will be paid only if they have earned paid time off or vacation days. (Id.). During the next 170 days (days 11 to 180), an employee receives short term disability benefits. (Id.).

**C. ARAMARK Terminated Plaintiff's Employment On The Date It Calculated Plaintiff's Short Term Disability Would Expire.**

7. ARAMARK began calculating Plaintiff's 180 days of short term disability from June 27, 2003, Plaintiff's last day of work.[2] Accordingly, ARAMARK calculated Plaintiff's short term disability benefits to expire on December 24, 2003.[3] (Ex. E; Pl. Dep. at 57:21-58:1).

8. According to ARAMARK's policies, if an employee cannot return to work when the employee reaches the maximum limit for short term disability benefits, then ARAMARK terminates the employee's employment and long term disability is the next option. (Ex. E).

9. On December 12, 2003, ARAMARK sent Plaintiff a letter advising him that, "[o]n December 24, 2003, you will reach the maximum limit for Short Term Disability Benefits. . . . Effective December 24, 2003, you will no longer be an active employee of ARAMARK Facility Services[.]" (Ex. E).

---

2 To the extent that Plaintiff challenges ARAMARK's inclusion of his scheduled vacation as part of his 10-day waiting period, it was to Plaintiff's benefit that ARAMARK counted his vacation days. As a result, Plaintiff received vacation pay during his waiting period rather than no pay.

3 To the extent that Plaintiff believes that ARAMARK miscalculated the length of his short term disability, this issue is immaterial to this action because it is undisputed that Plaintiff was not able to return to work at any point until September 1, 2005. Although Plaintiff may claim that if his employment with ARAMARK continued after January 1, 2004, he would have been entitled to an additional year of health insurance, Plaintiff is incorrect. The handbook clearly provides that only "ARAMARK employees" are entitled to insurance benefits. (Ex. B, at p. 11). The Summary Plan Description for the United HealthCare HealthSelect 2003 Point of Service Plan, the Plan in which Plaintiff was enrolled, also states, "[u]nder the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), you may continue your group coverage (the Plans described in this document or a Health Maintenance Organization, if applicable) if you would lose coverage due to a 'qualifying event'." (Ex. D, at p. 37; Affidavit of Patricia Leinheiser dated November 5, 2007, ¶¶3-4, attached hereto as Ex. C). The Summary Plan Description defines a "qualifying even" as including "termination of employment from ARAMARK (for reasons other than gross misconduct)." (Ex. D, at p. 37). Accordingly, regardless of whether ARAMARK miscalculated Plaintiff's short term disability, it is clear that Plaintiff's health insurance coverage would not have been extended for another year, and Plaintiff has no evidence to the contrary.

10. As of December 24, 2003, Plaintiff's condition had deteriorated and he was not able to work in a power plant at that time. (Pl. Dep. at 46:4-10, 46:14-17). Accordingly, Plaintiff's employment terminated and he went onto the long term disability plan. (Pl. Dep. at 8:17-20, 24:12-14, 39:6-14; 46:18-22).

**D. <u>ARAMARK Lost The Chesapeake Account</u>**

11. Coincidentally, at the same time that Plaintiff's short term disability benefits ended, ARAMARK's Chesapeake Energy contract was cancelled in December, 2003. (Pl. Dep. at 22:23-23:9, 23:20-23, 24:7-14).

12. Anthony Gabriel, the remaining ARAMARK employee at the Howard Complex, took another ARAMARK position at the Providence College Account. (Pl. Dep. at 30:5-7).

13. At the time that ARAMARK moved Mr. Gabriel to the Providence College account, Plaintiff was not able to work. (Pl. Dep. at 117:18-20).

**E. <u>Plaintiff Applied For and Received Other Disability Benefits.</u>**

14. In addition to his long term disability benefits, Plaintiff also applied for temporary disability through the State of Rhode Island. (Pl. Dep. at 49:17-20).

15. Plaintiff's Rhode Island benefits started on or about December 26, 2003 and continued for approximately twenty-six weeks. (Pl. Dep. at 50:6-17).

16. In order to receive the Rhode Island disability benefits, Plaintiff certified that he was unable to work. (Pl. Dep. at 50:22-51:1).

17. In April, 2004, Plaintiff applied for Social Security benefits, which he received.[4] (Pl. Dep. at 49:7-16).

---

[4] Plaintiff's Interrogatory Responses indicate that he received full Social Security disability benefits from December, 2003 to the present. However, for purposes of this summary judgment brief, ARAMARK will use the date provided by Plaintiff during his deposition.

18. Plaintiff still receives Social Security disability income. (Pl. Dep. at 51:9-10).

**F. Plaintiff Received A Liver Transplant.**

19. On January 3, 2004, Plaintiff received a liver transplant. (Pl. Dep. at 48:11-13).

20. Although his health began to improve after his transplant, Plaintiff's compromised immune system prevented him from working his normal job until September 1, 2004. (Pl. Dep. at 47:6-20, 48:14-21).

21. By September 1, 2004, however, Plaintiff did not have any limitations as a result of his liver condition. (Pl. Dep. at 48:22-24).

22. Plaintiff's doctor released him to "return to work on a full time basis on September 1, 2004 with no restrictions." (Ex. F; Pl. Dep. at 88:8-9, 89:24-90:2).

**G. Plaintiff Presents As Able To Return To Work But Refuses To Comply With The Procedure To Do So.**

23. In June, 2004, Plaintiff called Susan Duffy, who he understood to be an Aetna Insurance case manager, to tell her that he thought he would be able to return to work without any restrictions. (Pl. Dep. at 83:4-10, 84:8-13). Ms. Duffy told him that she could look into setting him up for a rehabilitation program to get back to work, but Plaintiff responded that he was not looking to go to rehabilitation. (Pl. Dep. at 83:11-16). He claims that Ms. Duffy then responded, "Well, ARAMARK doesn't usually bring back disabled people." (Pl. Dep. at 83:18-20, 84:13-15).

24. In July, 2004, Plaintiff contacted Becky Loughry, an ARAMARK Benefits Specialist, to tell her that he would be able to come back to work. (Pl. Dep. at 58:18-19; 84:1, 85:9-17). Ms. Loughry informed Plaintiff that ARAMARK's procedure required him to apply for a job through the Internet because he was no longer an active employee and had been terminated. (Pl. Dep. at 85:23-86:9, 90:18-21, 122:22-123:3).

25. Even though Plaintiff found "more than 300 jobs" posted on the Internet for which he claims he was qualified, Plaintiff refused to apply for any of them. (Pl. Dep. at 86:10-17, 87:3-15, 90:5-8, 90:14-17).

26. In August, 2004, Plaintiff contacted Ms. Duffy and informed her that his doctors had given him permission to return to work. (Pl. Dep. at 88:7-11). She again told him that Aetna does not get involved with returning employees to work unless an employee needs rehabilitation. (Pl. Dep. at 88:12-14). Because Plaintiff did not need rehabilitation, Aetna informed Plaintiff that it would terminate Plaintiff's benefits when he submitted a letter from his doctors certifying his ability to return to work. (Pl. Dep. at 88:15-17). Plaintiff stopped received long term disability benefits on August 31, 2004 because Plaintiff was able to work as of September 1, 2004. (Pl. Dep. at 46:23-47:5).

27. During this time, several ARAMARK employees contacted Plaintiff on multiple occasions about possible positions with ARAMARK accounts. (Pl. Dep. 102:1-13).

28. For example, in October, 2004, Plaintiff met with Ron Mesaros, Associate Vice President for ARAMARK Technical Services, because Mr. Mesaros wanted Plaintiff to come back full time to help him with a Pittsburgh account. (Pl. Dep. at 93:6-17, 94:11-13, 95:3-4, 96:5-10). Specifically, Plaintiff's role would have involved primary systems and Plaintiff would have taken the account over. (Pl. Dep. at 95:7-14). Plaintiff declined this position because he thought that this was a contract position and he wanted to be brought back as an employee. (Pl. Dep. at 93:17-22, 94:24-95:3). Plaintiff admits, however, he did not ask Mr. Mesaros why he only wanted to bring him back on a contract basis. (Pl. Dep. at 94:14-16).

29. Additionally, Jim Ridge, ARAMARK's Director of Engineering and Technical Services, contacted Plaintiff on multiple occasions about working for ARAMARK with the

Providence school system account. (Pl. Dep. at 93:24-94:4, 97:23-98:4, 99:23-100:18, 106:13-21; Ex. G, at P00059-60). Mr. Ridge was seeking a primary systems person who could handle employees, unions and trades. (Pl. Dep. at 96:14-20). Plaintiff also declined these opportunities because he believed that the job only entailed outside contract work. (Pl. Dep. at 96:20-97:3, 98:20-99:3). Plaintiff admits, however, that he did not actually know whether this opportunity involved outside contract worked because he "didn't get into the conversation" and it only "seemed like ARAMARK wasn't going to bring [him] back other than as an outside contractor." (Pl. Dep. at 97:6-12, 107:11-14) (emphasis added).

30. Tony Malagrino, the Regional District Manager in ARAMARK's K-12 Division for the Providence Public School District, also called Plaintiff about working for ARAMARK with the Providence school system account and serving as a mentor to one of their new employees. (Pl. Dep. at 93:24-94:4, 97:23-98:2, 100:5-9, 107:7-8, 107:14-15, 107:19-21; Ex. G, at P00059). Plaintiff also declined this offer. (Pl. Dep. at 98:4). Although Plaintiff believed that ARAMARK was not going to hire him, Mr. Malagrino did not say it was a contract situation nor did Plaintiff ask whether it was a contract situation. (Pl. Dep. at 107:11-24).

31. Mr. Ridge also asked Plaintiff whether he would be interested in working for him as an outside contractor for an account near Lake Tahoe. Again, Plaintiff refused. (Pl. Dep. at 97:17-23, 101:15-22).

### H. Plaintiff Has Withdrawn His Age Discrimination Claims.

32. Although Plaintiff alleged in his Charge of Discrimination filed with the Rhode Island Commission for Human Rights that ARAMARK discriminated against him based on his age and alleged disability, Plaintiff testified at his deposition that he believes that his lawsuit is limited to disability discrimination. (Pl. Dep. at 114:7-16).

Dated: November 9, 2007

ARAMARK MANAGEMENT SERVICES LIMITED PARTNERSHIP

By its Attorneys,

/s/ Michael Kraemer
Michael F. Kraemer (#6751)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02906
401-457-5196
401-457-5197 (fax)

/s/ William J. Delany
William J. Delany (admitted *pro hac vice*)
Anne E. Martinez (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, Pennsylvania 19101
215-963-5066/5718
215-963-5001 (fax)

**CERTIFICATION OF SERVICE**

To:

I, Michael F. Kraemer, hereby certify that on this 9th day of November 2007, I served a true and correct copy of the foregoing Statement of Undisputed Facts by first class mail, postage prepaid, on the following:

Nathaniel J. Nazareth, Jr., Esquire
Law Office of Nathaniel J. Nazareth, Jr., P.C.
36 South County Commons Way, Unit C-6
P.O. Box 788
Wakefield, RI 02880-2279

/s/ Michael Kraemer

059494/128950
842890v1